UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| TARA J. ELLISON<br><br>Petitioner,<br><br>vs.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>Respondent. | Case No. CV 13-0065-E-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Now pending before the Court is Petitioner Tara J. Ellison's Petition for Review (Dkt. 1), filed February 8, 2013, seeking review of the Social Security Administration's final decision to deny her disability benefits. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. ADMINISTRATIVE PROCEEDINGS

On June 29, 2009, Tara J. Ellison ("Petitioner") applied for Social Security Disability Insurance Benefits, alleging a disability onset date of November 19, 2008, when she was 35 years old. AR 150. Petitioner's claim was initially denied and, again, denied on reconsideration. AR 70, 72. Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On August 4, 2011, ALJ Robert J. Labrum held a hearing at which time Petitioner, represented by attorney Ronald Miller, appeared and testified. AR 38-68. Vocational expert Terri Marshall and claimant's husband, Chet Morris, appeared and testified as well. *Id*. At the

**MEMORANDUM DECISION AND ORDER - 1**

time of the hearing, Petitioner had past relevant work as a cashier. AR 32.

On September 16, 2011, the ALJ issued a decision, denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. AR 23-33. Petitioner timely requested review from the Appeals Council on September 30, 2011. AR 19. The Appeals Council then denied review on November 9, 2012 (AR 3-5) rendering the ALJ's decision the Commissioner's final decision. Plaintiff now seeks judicial review of the Commissioner's decision to deny benefits. Petitioner contends the ALJ erred in assessing whether Petitioner's residual functional capacity precluded past relevant work, improperly rejected medical evidence from the treating physician and examining physician, and failed to give legally sufficient reasons for rejecting Petitioner's testimony.

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less

than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

**A.    Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a

sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner had not engaged in SGA after November 19, 2008, the alleged onset date. AR 25.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921.

**MEMORANDUM DECISION AND ORDER - 4**

If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments: attention deficit hyper activity disorder (ADHD), bipolar disorder, generalized anxiety disorder, syncopal episodes of unknown etiology. AR 25.

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id*. Here, the ALJ concluded that Petitioner does not have an impairment (or combination of impairments) that meets or medically equals a listed impairment AR 26.

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b),

404.1565, 416.960(b), 416.965.  Here, the ALJ determined that Petitioner has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: can never climb ladders, ropes or scaffolds; can not tolerate exposure to hazards such as machinery and unprotected heights; can make only simple work-related judgments and decisions; and can understand, remember and carry out only short and simple instructions.  AR 27-32.  The ALJ also determined that Petitioner was capable of performing past relevant work as a cashier and, therefore, not disabled.  AR 32.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  If the claimant is able to do other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled.  Because the ALJ found Petitioner not disabled at step four, he did not need to address step five.  AR 33-34.

**B.     Analysis**

   **1.     Petitioner Credibility**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  The ALJ's findings must be supported by specific, cogent reasons.  The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record.  *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999).

**MEMORANDUM DECISION AND ORDER - 6**

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including consideration of claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, as well as claimant's daily activities, claimant's work record and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider: location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. *See* Soc. Sec. Ruling (SSR) 96-7p.

In assessing Petitioner's credibility, the ALJ stated that her "allegations are somewhat out-of-proportion to the medical findings, and generally not compatible or reasonably consistent with the medical evidence of record and all other evidence - and therefore not fully persuasive." AR 29. The ALJ did not find Petitioner to be malingering but rather found that "she can perform at higher levels than she states, or perceives she can." *Id*. The ALJ specifically noted that while Petitioner complained of chronic fatigue and digestive problems, there is no diagnosis of chronic fatigue syndrome or irritable bowel syndrome in the record. Additionally, her syncopal episodes were never observed and never medically diagnosed. The ALJ also found that Petitioner's mental limitations were minimized with treatment and that her lower GAF[1] ratings came during times of situational and familial stressors, or when she was not receiving treatment.

---

[1] GAF stands for Global Assessment of Functioning and is a numeric scale used by mental health clinicians and physicians to subjectively rate the social, occupational, and psychological functioning of adults. The scale is presented and described in the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) published by the American Psychiatric Association.

**MEMORANDUM DECISION AND ORDER - 7**

*Id.*

Petitioner challenges the ALJ's credibility determination and argues that the ALJ relies on boilerplate language that has been rejected by several courts as being insufficient and that "lack of objective medical evidence" is always a legally insufficient reason for an adverse credibility determination.

The Court disagrees with Petitioner's characterization of the ALJ's credibility determination. The ALJ did not rely solely on "lack of objective medical evidence." He acknowledged that there was no diagnosis of chronic fatigue syndrome or irritable bowel syndrome in the record. Consideration of a physician's testimony or treatment notes regarding the nature of symptoms of which Petitioner complains is a proper credibility consideration. Petitioner complains of chronic fatigue and digestive problems and the ALJ noted that while these symptoms have been noted by physicians, there has been no diagnosis of either disorder. AR 25-26. Another proper consideration is physician's testimony on the severity and effect of Petitioner's symptoms. The ALJ identified differences between GAF ratings that occurred in close proximity and noted that certain familial stressors seemed to account for these differences and these same stressors often aggravated and intensified Petitioner's functional limitations. AR 29. The ALJ also noted that Petitioner's symptoms seemed less severe with she was compliant with psychiatric treatment. Treatment measures are another proper factor to consider. AR 29.

Additionally, although included in an earlier section of the ALJ's decision, the ALJ discusses Petitioner's activities of daily living and finds she only has "mild restrictions," noting that she's able to care for personal needs and perform multiple household tasks, including cleaning, laundry, shopping and caring for her husband and children. AR 26.

As the trier of fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight. *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990). The ALJ made the proper considerations when assessing Petitioner's credibility; he considered inconsistencies in her testimony and conduct, her daily activities, her work record and evidence from physicians. Where, as here, there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). In other words, if the evidence can support either outcome, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

2.  **Medical Evidence**

Petitioner takes issue with the ALJ's consideration and rejection of the treating opinion from Dr. Ronald Zohner and the examining opinion of Dr. Baldree.

Ninth Circuit case law distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). In turn, an examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the

treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id*.; *Bayliss v. Barnhart*, 427 F.3d at 1216; *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

As to Dr. Baldree's opinion, the ALJ stated that he gave his opinion "very little weight." AR 31. The ALJ noted that Dr. Baldree's opinion "strayed outside his area of expertise" because as a psychologist, he was not qualified to make assessments of her employability based on her self-reports of syncopal episodes. *Id*. The ALJ also noted that Dr. Baldree failed to explain how Petitioner's bipolar symptoms would have resulted in her termination from work, had she not quit due to her physical complaints. The ALJ found Dr. Baldree's opinions poorly supported by his own examination of Petitioner. *Id*.

Because Dr. Baldree's opinion is contradicted by other physician's opinions, the ALJ

may reject it for "specific and legitimate reasons." An ALJ may reject a physician's opinion if it is based to a large extent on Petitioner's self-reports that have been properly discounted as non credible. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008.) The majority of Dr. Baldree's report is a recitation of Plaintiff's description of her mental health symptoms and her syncopal episodes. Dr. Baldree's opinion that Plaintiff's "occupational prognosis" was poor was based in large part on the self-reported syncopal episodes. When a physician relies on Petitioner's subjective complaints, which the ALJ properly discounted in an adverse credibility determination, that is a legally sufficient reason on which the ALJ could properly rely to accord less weight to Dr. Baldree's opinion.

Additionally, Plaintiff's possible neurological disorder, that leads to the syncopal episodes, was not in Dr. Baldree's area of expertise as a psychologist. *See Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001). A physician's opinion may be entitled to little or no weight when it relates to a matter beyond his or her area of specialization. *Id.* at 1203, n. 2. *See also* 20 C.F.R. § 416.927(c)(5). That neurology is not Dr. Baldree's area of expertise is certainly a factor that the ALJ can properly consider in affording less weight to that portion of his opinion. Further, an ALJ is not bound to a physician's opinion on the ultimate issue of disability. *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989). The Court finds that the ALJ gave proper consideration in affording Dr. Baldree's opinion little weight.

With regard to Dr. Zohner's opinion, the ALJ stated he gave it "persuasive weight" but noted that his opinion seemed to be influenced by Petitioner's current familial stressors and that "in the absence of her family related stress, there is nothing in Dr. Zohner's evaluation that would suggest that the claimant's mental functional capacity is any more restricted than" the

residual functional capacity. AR 31.

Dr. Zohner saw Petitioner on December 15, 2010 for "Pharmacological Management." AR 511. He also conducted a Diagnostic Evaluation. AR 526-30. In this evaluation, Dr. Zohner assessed a GAF of 45. AR 530. He noted that Petitioner's "primary concern evolves around stressors created by constant turmoil with her son." AR 529.

The ALJ did not reject Dr. Zohner's opinion. He gave it persuasive weight. The ALJ did find that Dr. Zohner's GAF rating of 45 was due to Petitioner's limitations caused by her familial stressors. The ALJ found that without these familial stressors, Dr. Zohner's evaluation would not support a GAF of 45. The ALJ also noted that Petitioner was assessed with a higher GAF, of 65, earlier in December 2010 by Shawna Tobin, LCSW, when assessing a treatment plan for Petitioner. AR 31; *see* AR 523.

The ALJ provided legitimate and specific reasons for not agreeing with the totality of Dr. Zohner's opinion on Petitioner's limitations. The ALJ noted that the evidence did not support such a limitation on function as assessed by Dr. Zohner, noted conflicting medical evidence, including a conflicting GAF from the same time period as Dr. Zohner's assessment. Conflicting medical opinions and conflicts in a physician's own notes are specific and legitimate reasons for rejecting a contradicted treating physician's opinion. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

3.     **VE Testimony and the DOT**

Plaintiff contends there is a conflict between the vocational expert's (VE) testimony at the hearing and the Dictionary of Occupational Titles (DOT). At step three, the ALJ determined Petitioner's RFC and included the following limitation: she can "only make simple work-related

judgments and decisions" and "understand, remember and carry out only short and simple instructions."[2] AR 27. The ALJ then concluded, at step four, that Petitioner could return to her past relevant work as a cashier (DOT Cashier II, 211.462-010, SVP 2). AR 32. Petitioner contends the ALJ erred in reaching that conclusion, arguing that she cannot return to her past relevant work as a "cashier II" because cashier II requires "Level 3 reasoning " which exceeds the scope of her RFC. More specifically, Petitioner contends Level 3 reasoning is beyond her limitations (as assessed by the ALJ) as being able to make only "simple work-related judgments" and understanding, carrying out and remembering only "short and simple instructions."

The reasoning level attributed to a particular job "gauges the minimal ability a worker needs to complete the job's tasks themselves." *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005). In the DOT, reasoning development is one of three divisions comprising the General Educational Development ("GED") Scale. Within that division are six levels of reasoning development. DOT, Appx. C.[3] Level 3, implicated here, presumes that the claimant is able to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *Id.*

Petitioner is correct that the occupation of cashier II in the DOT requires "Level 3 reasoning." DOT, Cashier II (211.462-010)[4] An ALJ must ask a VE if his or her testimony is consistent with the occupational information found in the DOT. *Massachi v. Astrue*, 486 F.3d

---

[2] The restrictions listed in the RFC are the same as contained in the ALJ's first hypothetical to the VE. *See* AR 62.

[3] *Available at* http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM.

[4] *Available at* http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM.

**MEMORANDUM DECISION AND ORDER - 13**

1149, 1153 (9th Cir. 2007). If a conflict exists, the VE must provide an explanation and the ALJ must decide whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT. *Id*. *See also* SSR 00-4p.

It is not clear that the ALJ was mistaken in his handling of this issue, despite Petitioner's strident claim that the ALJ was patently wrong. There is a split among circuit courts on whether a limitation to simple, *repetitive* or *routine* tasks is compatible with the performance of jobs with Level 3 reasoning as defined in the DOT. *Cf. Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (job with DOT Level 3 reasoning was *not* suitable for a claimant whose RFC limited her to "simple and *routine* work tasks") with *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (a claimant limited to "simple" work could perform job with reasoning level 3) and *Renfrow v. Astrue*, 496 F.3d 918, 920-21 (8th Cir. 2007) (a claimant with inability to do "complex technical work" was not precluded from jobs with reasoning Level 3.)) The Ninth Circuit appeals court has yet to address this question directly; however, a number of district court decisions within the Ninth Circuit hold that an RFC limitation to "simple, *routine*" tasks or "simple, *repetitive*" tasks is inconsistent with Level 3 reasoning. *See Gottschalk v. Colvin*, 2014 WL 1745000, *5 (D. Or. May 1, 2014) (collecting cases).

However, when it comes to how the Level 3 reasoning standard should apply when a claimant is limited to "simple work-related judgment" or "short, simple instructions," there are divergent views and no clear circuit guidance. For example, in one case in which the ALJ had limited petitioner to "simple tasks," the reviewing court reasoned that "[g]iven the significant case law within [the Ninth] Circuit that questions whether a claimant limited to *simple, repetitive* work is capable of performing jobs with a Reasoning Level of 3, the Court [would] not reach a

**MEMORANDUM DECISION AND ORDER - 14**

different conclusion simply because Plaintiff's RFC does not include a limitation to repetitive work." *Funches v. Astrue*, 2011 WL 1497068, at *5 (E.D. Cal. Apr. 19, 2011) (emphasis added). The *Funches* court also emphasized that even though the ALJ's decision stated that the testimony of the vocational expert *was* consistent with the DOT, there was "no indication in either the testimony or the interrogatories...that the ALJ *asked* the VE whether a conflict existed" and therefore the court could not determine whether the ALJ's finding was supported by substantial evidence. *Id*. at *6 (emphasis added). The court remanded for the ALJ to "obtain a reasonable explanation from the VE for the conflict between her testimony and the DOT." *Id*.

In contrast, in *Signavong v. Astrue*, the RFC limited the claimant to only simple work, and the ALJ twice confirmed by questions that the VE's testimony was consistent with the DOT. Further, in confirming the plaintiff could perform jobs with a Level 3 reasoning, the VE specifically noted that the ALJ had not limited the plaintiff to "repetitive work." 2011 WL 5075609, at *8 (C.D. Cal. Oct. 25, 2011). Hence, the VE made a distinction between simple work, and simple, *repetitive* work. *Id*. The *Signavong* court found there was no conflict in the claimant's limitation to simple tasks with his ability to perform jobs requiring Level 3 reasoning. *Id*. Even if there was a conflict, the court said that the VE "provided persuasive testimony to support her conclusion" that plaintiff could perform the job. *Id*.

In another analogous case, *Hite v. Colvin*. 2014 WL 1364922 (C.D. Cal. April 7, 2014), the ALJ limited Petitioner to "simple tasks with simple-worked related judgments." The court found that, "[a]lthough the VE in this case did not further elaborate on his representation that his testimony was consistent with the DOT, his testimony raised no *apparent* conflict between Plaintiff's limitation to simple tasks and his ability to perform these particular level three

reasoning jobs necessitating further inquiry from the ALJ." *Id*. at *4 (emphasis in original). The court affirmed the ALJ's decision. *Id*.

Additionally, not all district courts that have addressed the question of the reasoning level required to perform simple, repetitive tasks have found an incompatibility with Level 3 reasoning occupations. *See, e.g., Dahl v. Astrue*, 2011 WL 2836660, at *4 (C.D. Cal. July 18, 2011) (noting that Level 3 reasoning incorporates dealing with problems in standardized situations, necessarily implying some level of routine or repetition inherent in Level 3 jobs); *Koonz v. Astrue*, 2010 WL 3339388, at *9 (S.D. Cal. July 26, 2010) ("[T]here is no conflict between simple repetitive work and reasoning levels of 2 and 3 that the DOT assigns to the hand packager and linen attendant jobs.")

Hence, on these facts, there is a path to affirming the ALJ on this issue, and to do so would also be consistent with SSR 00-4p, as the ALJ here explicitly asked the VE if her testimony was "consistent with the DOT." AR 62. The VE testified it was. *Id*. However, as a matter of meeting the best practice in such circumstances, on the facts of this case, where there is potentially an unanswered question, even if unintentionally overlooked, the ALJ should do more to explore whether a conflict exists. This can be done by simply inquiring more fully of the VE to gain an explanation as to why there is no conflict, or, if there is no reasonable explanation from the VE, to incorporate that information in reaching the ultimate decision. As the Petitioner emphasizes, the U.S. Supreme Court has recognized that "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . ." *Sims v. Apfel*, 530 U.S. 103, 111 (2000).

Accordingly, "[i]t is the obligation of the ALJ to determine whether the expert's

testimony deviates from the Dictionary of Occupational Titles and whether there is a reasonable explanation for any deviation." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007.) When there is an unresolved conflict between the VE testimony and the DOT, the ALJ must elicit a reasonable explanation before relying on the VE. SSR 00-4p.

There may be no actual conflict between Petitioner's limitations in her RFC and the Level 3 reasoning required by the cashier II position. However, on the record before the Court, when considered under relevant law, the Court cannot conclusively make that determination. Rather, the case should be remanded to the ALJ for further consideration of this specific issue, that is whether the Plaintiff's RFC limitation to making only "simple work-related judgments" and understanding, carrying out and remembering only "short and simple instructions" precludes her from performing the cashier II position which requires Level 3 reasoning. Then, based upon whatever determination is drawn from such further inquiry, the ALJ should issue a further and final decision, incorporating such information into the final ruling.

## IV. CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ. *Key*, 754 F.2d at 1549.

As a whole, the Court found the ALJ's decision very well-reasoned and well-supported. The Court's concern rather is whether the record, and law, support the finding that Petitioner can perform a job that requires Level 3 reasoning given her residual functional capacity limitations.

This is not to say that this Court conclusively finds that Petitioner is disabled. Relatedly, it is not for this Court to resolve the question of whether Petitioner can perform her past relevant work as cashier II.

Rather, the Court finds the record needs further development as to whether there is a conflict between the vocational expert's testimony and Dictionary of Occupational Titles and if so, how that conflict is reasonably resolved. As recognized by the Supreme Court, it is the ALJ's duty to develop the record in this regard and therefore, the Court finds it best to remand this case for further consideration of this issue.

## V. ORDER

Based on the foregoing, Petitioner's request for review (Dkt. 1) is hereby GRANTED. This matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order. *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

DATED: **September 29, 2014**

Honorable Ronald E. Bush
U. S. Magistrate Judge